IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | Case No. 23-90116 (CML) |
| Debtors. | (Jointly Administered) |

**RESPONSE OF MAJOR LEAGUE BASEBALL AND CERTAIN
MAJOR LEAGUE BASEBALL CLUBS TO THE DEBTORS'
(1) OMNIBUS OBJECTION TO EMERGENCY CONSIDERATION
OF MOTIONS; AND (2) MOTION TO ADJOURN HEARING
REQUESTED FOR APRIL 13, 2023 TO MAY 12, 2023**

Cleveland Guardians Baseball Company, LLC (the "Guardians") and Minnesota Twins, LLC (the "Twins") (each of the Guardians and the Twins, with certain of their affiliates, a "Club" and collectively, the "Clubs") and the Office of the Commissioner of Baseball d/b/a Major League Baseball ("MLB"), by and through their undersigned counsel, hereby file this response (the "Response") to the *Debtors' (1) Omnibus Objection to Emergency Consideration of Motions; and (2) Motion to Adjourn Hearing Requested for April 13, 2023 to May 12, 2023* [D.I. 311] (the "Objection").

**Response**

1. The facts that the Debtors bemoan in their Objection are of their own making. The Debtors have chosen to pay the postpetition administrative expense obligations due to every single other NBA, NHL and MLB team other than the amounts due to the Clubs and the Diamondbacks. The amounts due here are in the tens of millions of dollars and another payment

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.ra.kroll.com/DSG. The Debtors' service address for purposes of these chapter 11 cases is: c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

is due to the Guardians on May 1. The Debtors are using the Clubs' valuable, unique and exclusive intellectual property without paying a single penny for it. Thus, there is nothing at all extraordinary about the *Emergency Joint Motion of Major League Baseball and Certain Major League Baseball Clubs to Compel Performance under Telecast Rights Agreements, or, in the Alternative, to Compel Assumption or Rejection of Telecast Rights Agreements and for Relief from the Automatic* Stay [D.I. 279] (the "Motion to Compel").[2] MLB and the Clubs are simply requesting that the Debtor RSNs comply with their previously negotiated contractual commitments and pay for the right to televise the Clubs' baseball games they are actively broadcasting. Contrary to the Debtors' assertions, the timing of the Motion to Compel is no surprise. (Obj. ¶ 1.) The Debtor RSNs' chapter 11 filing does not relieve them of their contractual commitments. They are obligated to timely pay postpetition expenses regardless of whether it is the first days of the chapter 11 cases or well into the chapter 11 cases. What is extraordinary is that the Debtor RSNs continue to broadcast Twins and Guardians games with zero payment. What is extraordinary is that the Debtor RSNs now, for the first time, in the Objection allege that they have some "right" to pay less than the contract rate for those games. This is not the law.

2. On April 5, 2023—two days after the Debtors failed to pay contractual amounts to the Clubs—MLB and the Clubs filed the Motion to Compel on an emergency basis. The Major League Baseball season started nearly two weeks ago, and the Debtor RSNs are continuing to broadcast the Clubs' baseball games without paying the Clubs *any* compensation whatsoever. With each broadcast, the Debtor RSNs are generating revenue that funds their cases

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the Motion to Compel.

from the exploitation of the valuable, unique and exclusive intellectual property granted by the Clubs, but without paying any compensation. Yet the Debtor RSNs have selectively chosen not to pay the Clubs for the right to broadcast their games, despite the Debtors' claims that they have sufficient cash to operate in the ordinary course and continue paying their ordinary course debts as they become due. Indeed, confoundingly, the Debtors have offered to escrow the full contract amounts—which benefits no one. Accordingly, each passing day with each passing broadcast without compensation substantially harms the Clubs, which demonstrates—and justifies—the emergency nature of the Motion to Compel.

        3.       The Debtors do not dispute that failure to pay the Clubs the Telecast Rights Fees and related sponsorship fees are defaults under the Telecast Rights Agreements and the cure periods under both Telecast Rights Agreement expire on April 18 and April 24—well before their requested May 12 hearing date. (Obj. ¶ 4.) Only after defaulting on their payment obligations do the Debtors even raise the fanciful argument that they can choose to not pay the agreed upon contractual rate. It is this relief that the Debtors are requesting that is extraordinary—not the Motion to Compel. The Objection is the *first* time the Debtors argue that they can somehow sidestep the previously negotiated contractual rate in favor of a "reasonable value." (Obj. ¶ 10.) While there is no justification for such relief, they could have requested such relief prior to defaulting on their payment obligations. Instead, they waited nearly two weeks after the Telecast Rights Fees were due to make this suggestion and are asking the Court to force the Clubs to wait at least another month. What's more, by the time of the Debtors' requested May 12 hearing, the Debtors will have missed another Telecast Rights Fee payment under the Guardians' Telecast Rights Agreement.

4. The Debtors' Objection is nothing more than a tactic to delay the payment of the Clubs' Telecast Rights Fees even further. The Debtors note their willingness to escrow the full contract amount, but, in fact, have yet to actually do so. (Obj. ¶ 7.) Moreover, an escrow is simply insufficient. Like any debtor enjoying the postpetition benefits of its executory contracts, the Debtors must comply with the terms of the agreement and pay all Telecast Rights Fees as and when due until the Court orders otherwise. The Clubs remain contractually bound to continue to perform the terms of the Telecast Rights Agreement and must be compensated at the contract rate. To the extent that a final order is entered that allows the Debtors to pay the Clubs an amount lower than the contractual rate set forth in the Telecast Rights Agreement, the Clubs will disgorge any difference in amounts received. Major League Baseball and its Clubs are not going anywhere. Unfortunately, the same cannot be said for the Debtors.

5. If the Debtors are unhappy with the terms of the arms'-length negotiated Telecast Rights Agreements, the Bankruptcy Code provides a very simple tool for the Debtors to use. They can reject the Telecast Rights Agreement and return the telecast rights back to the Clubs. The Debtors are trying to have it both ways. They want to continue using the Clubs' intellectual property and telecast rights because they recognize how fundamental these rights are to their business, for without them, they cannot generate revenue—they simply do not want to pay for them. So, the Debtors are coming up with any and all reasons they can to delay such payment, including by asking the Court to take the extraordinary measure of rewriting the terms of agreements that were freely negotiated and entered into. The Debtors are functionally holding the Clubs captive as involuntary unsecured creditors with no assurance that they will ever be paid for the use of their intellectual property.

-5-

      6.      As detailed in the Motion to Compel and related Declarations, the Telecast Rights Fees and Ancillary Fees provide a crucial source of revenue to the Clubs. While the Telecast Rights Fees make up a substantial percentage of each Club's annual revenues, the timing of these payments are also critical. The Telecast Rights Fees are payable during each MLB season and help the Clubs pay for a number of season-long expenses, including, among other things, game-related expenses, promotion of ticket sales and employment expenses for Club personnel.

      7.      Asking the Clubs to wait another month before a hearing on the substance of the Motion to Compel is inappropriate unless the Debtors pay the amounts due immediately, subject to partial disgorgement if subsequently required by a final order. Time is of the utmost importance—the Telecast Rights Fees are critical to the continuing operation of the Clubs. MLB and the Clubs request the Court deny the Objection and proceed with the hearing on the Motion to Compel on April 19 unless the Debtors immediately pay all amounts due, subject to partial disgorgement if subsequently required by a final order.

Dated: April 11, 2023
      Houston, Texas

**BRACEWELL LLP**

/s/ *William A. (Trey) Wood III*
William A. (Trey) Wood III (Texas Bar No. 21916050)
711 Louisiana St., Suite 2300
Houston, Texas 77002
Telephone: (713) 221-1166
Facsimile: (713) 221-1212
E-mail: trey.wood@bracewell.com

Mark Dendinger (admitted *pro hac vice*)
CityPlace I, 34th Floor, 185 Asylum Street
Hartford, Connecticut  06103
Telephone: (860) 256-8541
Facsimile: (800) 404-3970
E-mail:  mark.dendinger@bracewell.com

-and-

**SULLIVAN & CROMWELL LLP**
James L. Bromley (admitted *pro hac vice*)
Alexa J. Kranzley (admitted *pro hac vice*)
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: bromleyj@sullcrom.com
        kranzleya@sullcrom.com

Counsel for:
Office of the Commissioner of Baseball
Cleveland Guardians Baseball Company, LLC
Minnesota Twins, LLC

**Certificate of Service**

I certify that on April 11, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/William A. (Trey) Wood III
William A. (Trey) Wood III